Madam Clerk, please call the first case. 115-9346, Mr. Van Duyn v. Council of Power Council, you may proceed. Good afternoon, Justices. If I could have 10 minutes for argument. Your name, please. My name is Patrick Sirocco of the Role Maker Law Firm. Thank you. We are counsel for the appellant, Kevin Van Duyn. But can you tell us why we're dealing with a final order? I'm sorry, Your Honor. We have a final order here that we're dealing with? We have jurisdiction? Yes, Your Honor, you have jurisdiction. No, it's not. The court affirmed that at the commission, found an intervening accident, settled the causal connection between the work injury and the current condition, Mr. Van Duyn. No, I'm missing the point. Did the circuit court remand this back to the commission? I believe they have. To do what? To determine ancillary issues to their affirmance of the finding, settling the causal connection. So where is our jurisdiction? I'm sorry? So where is our jurisdiction? Well, they reversed on the ultimate issue of the causal connection, and therefore that's a final and appealable order. No, not if it's remanded back to the commission with instruction to do something other than a ministerial calculation. Well, then I may be incorrect in my statement that it was remanded back to the commission. It was remanded back to the commission. It was remanded back to the commission with directions to determine what portion of medical expenses after the date of the auto accident were related to his right foot injury. He introduced medical bills during the course of the arbitration hearing where he was treated for foot, neck, back, all sorts of things, all the way through to the date of arbitration, and the commission absolutely found that the automobile accident had nothing to do with his right foot, but they never awarded medical bills past the date of the accident for the right foot. So the circuit court reversed their medical expense award and sent it back with directions for them to calculate the medical expenses owed to this man for his right foot all the way up to the date of hearing. So back to his question, why do we have jurisdiction? Because the finding that severed the causal connection between the man's condition is the main basis for recovery for benefits under the Act. It doesn't make it a final order if it's remanded. Well, the issue with respect to the neck and the low back is final. It's not a final order. We only have jurisdiction to hear appeals from final orders. Certainly the order of the circuit court did not terminate the litigation as to any claim, nor did it terminate the litigation as to a party. With respect to temporary disability pay, the filing of the current condition of the back and the neck, it did. Wait a minute. And yes, he affirmed it, but you can't parcel out the relief and call them final orders or we're going to get appeals up here where the only thing that has changed is 10 days of TTD. Those aren't final orders. The final order is decision of the commission confirmed, period, nothing more. That's a final order. Decision of the commission reversed, arbitrator's decision reinstated. That's a final order. But commission's decision on any issue reversed, remanded with directions to do thus and such is not a final order. Unless it's a simple mathematical calculation as they call it, but that's not what you have here. Well, if they're simply determining the amount of medical bills and expenses related to the foot, then it simply is a mathematical calculation. Oh, no, it's not. You've got medical bills here that not only relate to the foot, but relate to the neck and the back. They've got to make a determination of what is applicable to the right foot and the direction on remand was, and then award the claimant the benefits to which he's entitled for medical expenses for the right foot post the automobile accident. If one looks at the treatment for the foot and corresponds to the medical records and bills for the foot treatment, that is simply a ministerial act. Not if there's multiple treatments on the same bill. There's always multiple treatments on the same bill. Not necessarily so. If the only thing that's injured is my right foot, the only thing I get a bill for is my right foot. If my right foot and back are injured and the same doctor treats the right foot and the back, I get a single bill for both. That didn't happen in this case, Your Honor. John King treated for his foot and no other doctor. He received neck and low back care from Dr. Shenning and Dr. Medina, and there was also injection bills related to Dr. Medina, the neurologist's care. He did not treat the foot. Dr. King did. Dr. King's records and bills can be easily discerned and determined, but the cause of connection being intravenous as found by the commission is a final and appealable issue. Counsel, you're wrong it is not. You are just simply wrong. Once that remand went into effect, the only argument that you can make against it being a non-final order is that the work that the commission had to do on remand was purely ministerial and that it was an easy calculation. Calculating the bills of Dr. King, Your Honor, is something requiring legal analysis? I'm not sure. I didn't say legal analysis. Well, if you're looking at the bills and you know that Dr. John King only treated the foot, then you can discern very simply in a ministerial fashion what those bills are. What about his physical therapy treatments from May of 2002 and May of 2003? That was for his back. It was for his right ankle. And he got bills for it from May of 2002 to May of 2003. He reported low back pain and pain rating down his right leg in June of 2002. He was referred to a neurologist for his neck, back, and right ankle. Continued to treat with this doctor on a regular basis for all three conditions until 2012. And he testified that from 01 until the time of the arbitration, he continued to have pain in his low back and right foot. So how do we parse out the right foot bills post the accident? Your Honor, I'm not asking this court to do that. If there are ‑‑ every bill has a date of service and a CPT code for physical therapy. If, in fact, the low back and the feet were treated by the same physical therapist or at the same meeting. Those can easily be parsed out. It's a clerical issue. All right, go ahead. My statement is it's a clerical issue. And we're here on the finding of causal connection, which was severed by the condition's finding and reversed the finding of arbitration on that issue. Counsel, you can't sever causal connection from the underlying application for adjustment of claim. You file an application for adjustment of claim, what do you have to prove? I had an accident. There's a causal connection between my accident and my condition of ill being. What are my medical expenses? How long was I off? And am I entitled to PPD? And do I get prospective medical? Are you suggesting that a ruling on any one of those things becomes a final order? Your Honor, our main thrust is our argument is the commission did not file the applicable case law. The Volga, Tesco, and‑ Counsel, stop, stop, stop. I know what your argument is. But we are under an obligation to examine our jurisdiction before we ever get to your argument. We're trying to figure out if there is jurisdiction. The circuit court parsed the issue and created and bifurcated by its own affirmation of the commission by separating off the foot and ankle. And it also reflects their misunderstanding of the applicable case law on causal connections and circumstances of an intervening event, which preexists, pardon me, of a symptomatic event, which preexists an intervening event. And in doing so, the court affirmed the finding of the commission, finding that the car accident intervened and severed the causal connection, but then decided to split off the foot and ankle charges and found, well, the foot is still related to the work injury, so that shouldn't persist and will remain that for a decision on the bills as it relates to the foot. But the main thrust is an appealable and final issue, because it cut off the TTV, the findings of permanency, and everything else relating to it. And they went outside their jurisdiction and, pardon me, not jurisdiction, but their standard review and parsing off a piece of it. The court's role is not to reweigh the evidence heard by the commission. It's to decide whether or not it was consistent with the manifest way that the evidence presented. That's also an argument of ours that it was not. But if I can get back to our main argument, the fact of the matter was, as we feel this is a no-go standard of review, when the commission was incorrect when it determined that it severed the causal connection between the work injury once this August 2002 car accident occurred, the commission failed to analyze the medical evidence before it, before and after the motor vehicle accident. It relied solely on Mr. Van Dyne's statements of medical condition in cutting off causal connection. This is contrary to law. Their failure to discuss or analyze the medical evidence before and after the motor vehicle accident precluded any possibility of determining whether or not Mr. Van Dyne's three conditions were still a causal factor related to the work injury. The fundamental inquiry in this matter must recognize the issue is not one of an asymptomatic individual without a pre-existing condition of pathology, and the application of the law in these circumstances of an intervening event employed by the Supreme Court in Vogel and this Court in Mendota, Tesco, and more recently ABF Wright is an in-depth inquiry, discussion, and analysis of the medical evidence both before and after the intervening event. This was not done by the commission, and it was an error. When conducted, the inquiry into the medical evidence reveals plainly there was no medically demonstrable change to any of his three conditions as a result of the car accident in August of 2002. His complaints did not change. His clinical presentation did not change. The diagnosis did not change. The treatment recommendations did not change. The failure of the commission to analyze this medical evidence as it should under the existing binding case law before and after the car accident made it impossible to discern whether or not Mr. Van Dyne's condition of ill-being was still related to the work injury being a causative factor, is the causal standard. As a matter of law, under the cases that I've cited, the car accident could be found to be a severing cause only if the medical evidence demonstrated that the work injury were no longer a causative factor in his current conditions. That's not a question of fact. That's a question of law. It's a question of law. It's a question of application of law to the undisputed medical evidence of the record, Your Honor. Do you disagree the evidence is undisputed about medical evidence is undisputed in this case? The medical evidence is undisputed in this case. Well, okay. And as such, it's a de novo review, Your Honor. For those reasons, the finding of the commission is against the construction of a causative factor standard as enunciated by the Supreme Court in Vogel, this case most recently in ABI Freight. If you're looking for a great example of what kind of medical evidence is required to sever a causal connection, you can look no further than your discussion in ABI Freight. In that case, the gentleman had a lower back injury at work. He had a subsequent injury. The clinical expression went from the left leg to the right leg. There was a recommendation for a decompressive procedure. He goes back to work, has, I believe, a car accident, and thereafter has opposite leg clinical expression, need for surgery that's more complex, going from a decompression to a fusion with instrumentation. Those findings were changing at different levels, affecting the other leg, were also reflected on comparative CT, myelograms, and MRIs. In this case, there is no medically demonstrable change whatsoever in the treaty records. There isn't even a history of the car accident in the medical records following August of 2002. The Commission's sole reliance on lay witness testimony, in this case, the claimant's description of his condition, is not a sound evidentiary basis to reverse the finding of the arbitrator. In cases of an intervening causal event, the essential inquiry is not the credibility of the claimant's description of their condition, but one of determining the medical causation by analysis of the clinical presentation, diagnostic findings, if they correlate, treatment recommendations, diagnosis by doctors, and testimony of physicians. A lay witness is simply not competent to render an opinion on a change in medical diagnosis. Under these circumstances, as a matter of law, a non-expert's testimony on diagnosis, when contradicted by all the other medical evidence, is an improper evidentiary basis on which to determine the ultimate issue of medical causation in these circumstances, and it's contrary to law. The medical evidence is undisputed that Mr. Vandana was treated up to the date of the car accident for his right foot, right leg, low back, and cervical spine. Immediately prior to, and actually earlier, the same day as the car accident. The medical evidence is undisputed that he had not reached maximum medical improvement for those conditions prior to the occurrence of the car accident. This fact that he was in the midst of a healing process has found to be crucial by the Supreme Court's vote in this court in Tesco when they've sustained a causal connection in cases of an intervening event. On review of all the medical evidence, the five treating doctors, two transcripts of evidence deposition testimony of treating, pardon me, examining defense orthopedic experts, none of them advance any opinion whether or not the car accident had any causative relation to Mr. Vandana's current condition. There simply is not any medical evidentiary support for the commission's decision to find that an intervening event broke the causal chain in this matter. I wish to stand in my brief with respect to any other points I had not argued. Did the court have any further questions? I don't believe there are. Thank you. Thank you for your time, Your Honor. And don't bring the water back. We've got water right there. Good afternoon, Justices. Terry Donohue on behalf of the affilee, Joseph Whelan Sons. Mr. Donohue, can I ask you a question? Yes. I'm looking at pages 22 and 23 of your brief. You knew that there was a jurisdictional problem in this case. You put it in your brief, never moved to dismiss it for wanted jurisdiction, and never argued it. You put all sorts of black-letter law in this brief about when we have jurisdiction or when we don't have jurisdiction, and then did nothing with it. Went immediately into causal connection. And is the question why? Yeah, why? Well, Judge, I thought it was important. I thought it was important to relate what the case law is in terms of whether you have jurisdiction or not. Well, don't you think you should have filed a motion to dismiss this case if you thought there was no jurisdiction? I wasn't entirely confident that you may not have jurisdiction. There is only a minor issue remaining with respect to the foot in the medical bill, but it may take more than ministerial function of the commission to determine that. So it wasn't clear to me. I didn't know if there was a 100 percent basis to succeed on that. But you saw the issue as a looming issue, obviously. I did. You know, part of it, too, is this case is so old that there's a ñ it's not an acceptable reason, but, you know, you just want to have that. And we don't have a so-old exception with grand jurisdiction. Yeah. You just want somebody to make a decision. I mean, when you get a case like this one, there is no reply brief. So we don't have a response to your observation that when there is jurisdiction and when there isn't. But nevertheless, you're here. But I do have a threshold question. Do you agree with his argument that this is a de novo standard of review? No, no. I completely disagree. I believe that the determination made by the commission was one on the broad issue of causation. Subsequent intervening accident is a subset of a causation issue. That's a factual question, right? Always. As far as I'm concerned, every case has determined that to be a manifest way of the evidence issue and a question of fact. And we believe that the finding on causation here was a question of fact. There is no error of law, and it's not against the manifest way of the evidence. The first question is, is there any evidence to support the finding of no causation and to support breaking that chain on August 19, 2002, specifically? There may be a number of dates where you could break it. They chose August 19, 2002 because it correlated with an auto accident. They did it because of factual reasons initially. The petitioner himself had signed pleadings where he swore that his low back, his upper back, and his neck were all injured in the auto accident. We're going to accept the petitioner at his word on that since he was under oath. In answers to interrogatories, he put forth the same medical treatment and bills from Dr. Schoening and Dr. Medina in a similar lost time, saying it was from the auto accident, not from this work comp accident. So there is a factual basis to determine that August 19, 2002 is a date when there was no longer a causation. Another factual basis is he gave deposition testimony where he talked about his auto accident pain still being present and constant in 2004, stated that his headaches don't have anything to do with the workers' comp accident, and so forth. I think there's abundant factual evidence. It's hard to get that kind of evidence. It develops late in the case. That's a question you might ask, why wasn't this presented to our doctors? It didn't come along until late in the game, and so therefore there was no opportunity to do that. But then the question is, well, what about medical evidence? Appellant argues that there has to be medical evidence, and it's a question of law, and we don't have any, and therefore we win. But to say that there's not a scintilla of medical evidence around the time of the auto accident is incorrect. And I apologize. These things, when they're around so long, you re-review them, and sometimes you find things you didn't exactly notice before. Within the records, within Dr. Schoening's records, which is Petitioner Exhibit 10, and I think in the actual appellate record it goes with page 493, Dr. Schoening actually has an August 20, 2002 off work slip. It says the petitioner cannot work and restricts him completely from work. That's the day after the auto accident. That's a piece of medical evidence. Before that, the claimant was working. He was either working light duty, but for sure he was working. He had never been restricted. Then we have the auto accident. We have a slip from Dr. Schoening the next day saying no work for you. You cannot work at all. And he repeats this off work status several times after that up until he last, up until November 11, 2002, Dr. Schoening does, and then he gives what he calls a return to regular duty seated position. It wasn't just Dr. Schoening, although Dr. Schoening's is right contemporaneous with the auto accident, opinion on work status that changed after the auto accident. Dr. Medina wrote his opinion on August 5, 2002. He said the petitioner is authorized to work. So the petitioner is fully capable of working pre-accident per Dr. Medina, and it's not until after the auto accident that Dr. Medina says he can't work at all, and that's later sometime in February, but still we have the order of things, the ability to work before the car accident, the inability to work afterwards. So the petitioner's work status has changed. There's medical evidence of that. It's from Dr. Schoening specifically, but also Dr. Medina. The problem with the treating records in this case, especially Dr. Schoening, the criminal factor, is that they're extremely redundant and uninformative. Again, I went through them again and was amazed to find that if you look under objective findings, for 50 straight visits you will see the same 11 sentences repeated in each visit. They're simply pasted in there time after time after time. So it's not surprising that there's nothing new documented  simply because things are just being pasted in there one after another for 50 times. An interesting thing that's in the record is the billing of Dr. Schoening, and I encourage you to look at that. That's Petitioner Exhibit Number 11, and that's pages 502 to 520 of the record. And I apologize for not mentioning this before, but when looking at it more directly, I came upon something, which is that there are two separate and distinct bills submitted by Dr. Schoening. The first bill is for $4,610, and it specifically gives an onset date of November 18, 2001. It gives the workers' comp accident. It describes treatment going from May 22 to November 13, 2002. In that particular bill, it gives four specific medical diagnosis codes, and I won't give you the numbers, but the numbers are there in the record, and they correspond with the following four diagnoses. Striking against or by object is the first. Ankle synovitis is the second. Lumbar lateral canal stenosis is the third. And facet syndrome is the fourth. That's the diagnoses that Dr. Schoening is working with in terms of the work accident. He then has a second bill, which is in the record of PX11. The second bill is for $5,247, and most interestingly, in this note, it gives a specific onset date of August 19, 2002, which is, of course, the auto accident date. And also in this bill, there are four distinct medical diagnosis codes given. Those four codes given are completely different than the four codes that preceded it for the treatment before. So these four codes are motor vehicle accident, passenger is the first one, hyperextension, hyperflexion injury is the second, nerve root compression is the third, and spasm of muscles is the fourth. So the diagnosis from Dr. Schoening has absolutely changed. He's giving four completely, and there's no intersection there. They are different diagnoses from the work accident than from the car accident. This is in addition to the petitioner now being completely off work for the first time, according to Dr. Schoening. And you can see from the billing, although mysteriously his records don't have anything regarding this, that on August 21, 2002, he ordered x-rays and did a comprehensive exam. This is sort of sandwiched in those 50 repetitive entries. So we know something happened August 19th. We know he was aware of it. We know he changed the diagnosis. He changed the work status. He was aware of the accident. He investigated. He did a workup, and he changed that diagnosis, changed the treatment that he was providing to address those different diagnoses. And he then did this from the work accident date or, I'm sorry, from the car accident date of August 19, 2002 until he stopped treating the claimant on May 14, 2003. Now, another thing that's troubling about Dr. Schoening, if you look at these bills, too, is he submitted the same darn bills, at least an intersection of 15 days of service, asking to be paid both from workers' comp, but also to be paid as attributable to the work accident. So that in itself, I think, makes Dr. Schoening's opinions not credible. So I think we have both extremely damaging factual evidence that there's no causation and that the chain of causation was broken on August 19, 2002. And we actually do have medical evidence, as I just discussed. Dr. Schoening documented the motor vehicle accident in his billing. He did x-rays. He did a comprehensive exam. He changed his diagnosis completely. But besides just a subsequent intervening accident finding of August 19, 2002, there's abundant additional evidence why there's no causation here. And this actually is the causation could have been cut off much sooner. I'd actually submit it should have been cut off. Perhaps the best date would be April 29, 2002, which is when the second time that treater, Dr. Bauer, discharged the claimant. By that point, the petitioner had gone to the emergency room. They only got a history and treatment regarding a minor ankle laceration. There's no loss of consciousness. There's no history or evidence of any spinal injuries, spinal conditions, spinal complaints, back injury, nothing like that. It's just an ankle case. He next goes to Dr. Bauer. By March 21, 2002, treater, Dr. Bauer, and these aren't respondents, doctors, he says the MRIs did not provide enough abnormalities to explain the symptoms. And he discharges the claimant. That's in March 21, 2002. The claimant then goes to Dr. Ray Orthopod. He examines the claimant and eventually gives him a full-duty return to work on April 9, 2002. And he says this has been going on for too long. And sandwiched in there we have treating physician, Dr. Goldberg, who the petitioner himself tells us told the petitioner, January 21, 2002, if you think you're going to court with arthritis and some kind of disc, you know, I'm not buying it. How often do you get stuff like that from a treater? And then finally he goes back to Dr. Bauer a second time, April 29, 2002. Dr. Bauer kind of more or less throws up his arms, says I don't know why he's back today. He does not get better at any time since December 2001. He discharges him a second time. All of this is abundant medical evidence supporting that there is no causation outside of the auto accident. We also have, and those are all treaters, but we also have Dr. Wainer who examined the claimant in 2003 and also in 2007, said he only had a minor right ankle injury, had no spinal injury. And then we have Dr. Graf, another examiner, who reviewed the records and conducted an exam and again said, hey, this is only a minor right foot injury. There's not any spinal injury. So for all these reasons, the appellee requests that the commission's decision be affirmed in total. And if you don't find that there is a subsequent intervening accident as a result of the car accident, which we think you should because there is medical evidence, comment that there are abundant bases to affirm the breaking of causal connection. Thank you. Thank you, counsel. Counsel, you may reply. Thank you. If I may first address Justice Hoffman's concerns regarding jurisdiction. It read from the circuit court's order. It is ordered as follows. The commission's decision in Van Duyn versus Joseph Weil and Sons et al. is confirmed in all parts except with regard to the medical expenses relating to the foot injuries. Under Supreme Court Rule 301, incidental issues do not stop a matter from being a final and appealable order. Dr. John King was the only doctor to treat the foot. The treatment by Dr. Elias, Dr. Medina, and Dr. Shenning was for the neck and low back only and not the foot. So it's very easy to determine the treatment with Dr. King. And, of course, if there were therapy by CPT code, that is a ministerial act that does make the remainder of the affirmation of the commission's finding a final and appealable order. Is there a case that shows that? Well, I'm just describing that mechanically, Your Honor. Do you have a case that shows that? I don't have a case on me that says that, Your Honor. You may want to look at the A.E. Staley case out of the Supreme Court. I will do that, Your Honor. The second paragraph of the judge's order you didn't read, the commission's decision to reverse the remainder in regard to the medical expenses relating to the injury of the foot to determine what, if any, medical expenses following the car accident are related to the treatment of the plaintiff's foot and to calculate any awards due based upon that determination. This is not a mathematical calculation. As counsel has indicated, the CPT codes reflect the car accident, so you can actually determine what are related to the car accident. It's not a question of what's related to the car accident. It's a question of what's related to his right foot. Well, Your Honor, you can see the treatment of Dr. Kane and his foot, and as counsel indicated, and other records of their therapy, they make special indications for car accident-related situations, which is what is requested in that second part of the order that Your Honor had talked about. Now, moving back to the substantive issues in the case, the decision on causal connection we feel is a de novo review because they simply did not follow applicable law. Counsel talks about them being billing indications. However, there's not even a history in the car accident of any of the five treating doctors. Further, there's no testimony from both defense medical experts at all on the issue of whether the car accident bore any relation to the gentleman's current condition. And that position that the causal connection is a question of fact misapprehends the issue in cases of an intervening event. We're not talking about an individual who's asymptomatic, with no preexisting condition of pathology. Counsel, I just want to call your attention to, for your own benefit to look at later, National Freight Industries case out of this court, 2013. It says, whether an accident constitutes an independent intervening cause is a question of fact for the commission. It's a question of fact for the commission. It cannot be a matter of law. Well, Your Honor, I'm very familiar with that case. And I won't speak to that issue. If the court provided one look at this as it manifests with the evidence standard, and looking at the cases of Volvo and Tesco and National Freight, the one you just spoke to, the court, this court in National Freight, distinguishes its finding in Volvo in stating that, in this case, there is evidence from which the commission could reasonably conclude that the motor vehicle accident changed the nature of the claimant's injury, was the sole cause of the current condition of their being, and therefore broke the causal chain in that matter. And that's why this court found that the individual's causal chain was severed by the intervening event. And that is distinguishable from our factual context. This individual was treated for the right foot leg, the neck, and the low back on the date of the motor vehicle accident. He was still restricted from the foot surgery. He had a disc injury diagnosed by a neurologist. He had six different EMGs, which had the same findings before and after. But it's not the role of this court to re-weigh the medical evidence that was heard by the commission. Is it apparent from the medical evidence that an opposite conclusion was apparent? And we find, and our contention is, that it clearly was. Because there wasn't even a history of a motor vehicle accident in any of the records. There's no change in clinical presentation. No change in diagnostics. No treatment recommendation change. The man was still treated for the three injuries and was still healing under Vole, Tesco, Mendoza, and National Freight. If the person is still treated and not released to work, and the intervening event has no clinical effect demonstrable in medical evidence, this court has found that the work injury still remains a causative factor in that gentleman's condition of ill-being, and that causal connection is still sustained. Those are the medical facts we find ourselves from. So even if we approach this from a manifest way that is standard, an opposite conclusion from that found by the commission in severing the causal connection is clearly apparent. And for those reasons alone, the commission's finding should be reversed and that of the arbitrator reinstated. Thank you for your time. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.